624 A.2d 237

**STEINBERG VISION ASSOCIATES, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 1, 1993.

Decided March 31, 1993.

Stephen P. McCloskey, for petitioner.

Linda S. Lloyd, Asst. Counsel, for respondent.

Before PELLEGRINI and FRIEDMAN, Judges, and NARICK, Senior Judge.

PELLEGRINI, Judge.

Steinberg Vision Associates (Employer) appeals an Unemployment Compensation Board of Review (Board) order upholding a referee's decision granting benefits to the claimant, Betty Saska (Claimant), finding that she voluntarily quit work for necessitous and compelling reasons as required by Section 402(b) of the Unemployment Compensation Law.[1]

Claimant was hired by Steinberg Vision Associates on January 24, 1985 as a vision therapist. At the time of hire, Claimant, a diabetic, negotiated a full employer reimbursement for a Blue Cross/Blue Shield health insurance plan as a fringe benefit. Over the course of Claimant's employment, premiums for her Blue Cross/Blue Shield coverage rose from $101.55 to $210.16 a month.

In August, 1991, Blue Cross notified the Employer that premiums would increase to $235.16 a month. The Employer determined that it could no longer afford to reimburse Claimant for her coverage under this plan. The Employer informed Claimant that it would no longer be reimbursing her for Blue Cross/Blue Shield coverage. Rather, the Employer proposed

1. Act of December 5, 1936, Second Ex.Sess., P.L. 2897 (1937), *as amended*, 43 P.S. § 802(b).

to either provide Claimant with the same coverage as other employees were given, or pay Claimant an additional $64.48 per month to apply to her current policy.[2] Claimant refused the Employer's proposed insurance modification and voluntarily quit her employment on September 24, 1991, for this reason. Claimant subsequently filed for unemployment compensation benefits.

■ After a hearing, the referee found that Claimant voluntarily terminated her employment because of the Employer discontinuing her Blue Cross/Blue Shield reimbursement. The referee held the Employer's action to be a substantial unilateral alteration of the conditions of Claimant's employment, sufficient to provide cause of a necessitous and compelling nature to quit and precluding disqualification based upon Section 402(b) of the Law[3]. By order of March 2, 1992, the Board affirmed the referee's decision and order, from which the Employer appealed to this Court.[4]

■ As the Employer has not challenged the findings of fact made by the Board [5], the sole issue on appeal is whether the Board erred as a matter of law when it held that the Employer's alteration of her health insurance fringe benefits

2. Two years previously, the Employer switched all its other employees, including the owner, from Blue Cross/Blue Shield to Golden Rule Insurance which would cost $64.48 a month for Claimant. Golden Rule Insurance provided significantly less coverage than Blue Cross/Blue Shield, yet entailed a substantially higher deductible.

3. Section 402(b) states in part:
   **Ineligibility for compensation**
   An employe shall be ineligible for compensation for any week—
   (b) In which his unemployment is due to leaving work without cause of a necessitous and compelling nature,....
   43 P.S. § 802(b).

4. Our scope of review is limited to determining whether the claimant's constitutional rights were violated, whether an error of law was committed or whether the findings of fact are supported by substantial evidence. *Dingbat's v. Unemployment Compensation Board of Review*, 123 Pa.Commonwealth Ct. 73, 552 A.2d 1157 (1989).

5. Findings of fact made by the Board, which are not specifically challenged, are conclusive upon review. *Salamak v. Unemployment Compensation Board of Review*, 91 Pa.Commonwealth Ct. 493, 497 A.2d 951 (1985).

gave Claimant cause of a necessitous and compelling nature to quit her employment.[6]

Section 402(b) provides that an employee can quit work and still be eligible for unemployment compensation benefits if she did so for a "necessitous and compelling" reason. This Court has long recognized that a reduction in compensation, if substantial enough, will constitute the requisite cause to quit employment contemplated by Section 402(b). *Naylon v. Unemployment Compensation Board of Review*, 83 Pa.Commonwealth Ct. 502, 477 A.2d 912 (1984). A "cause of a necessitous and compelling nature" is one that "results from circumstances which produce pressure to terminate employment which is both real and substantial and which would compel a reasonable person under the circumstances to act in the same manner." *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 358–59, 378 A.2d 829, 832–33 (1977).

There is no talismanic percentage that separates a substantial, from a non-substantial wage reduction. *Ship Inn, Inc. v. Unemployment Compensation Board of Review*, 50 Pa.Commonwealth Ct. 292, 412 A.2d 913 (1980). Rather, each case must be examined under its own attendant circumstances, *Griffith Chevrolet–Olds, Inc. v. Unemployment Compensation Board of Review*, 142 Pa.Commonwealth Ct. 242, 597 A.2d 215 (1991), with the focus of the inquiry being the impact upon the employee. *National Freight, Inc. v. Unemployment Compensation Board of Review*, 34 Pa.Commonwealth Ct. 161, 382 A.2d 1288 (1978).

On appeal, the Employer contends that the Board erred in finding the Claimant to have a necessitous and compelling reason for quitting her employment, because the change in conditions instituted by the Employer was done in good faith and out of economic necessity. Because Section 402(b) focuses on the impact that a modification has upon an employee and not the employer's reasons for making the

6. Whether one has cause of necessitous and compelling nature to quit employment is a question of law subject to review by this Court. *Truitt v. Unemployment Compensation Board of Review*, 527 Pa. 138, 589 A.2d 208 (1991).

modification, it is not a defense for the Employer merely to establish that it had good reasons to institute a compensation reduction. If we were to adopt this reasoning, any reduction in compensation, no matter how substantial, would not justify the award of unemployment compensation benefits if such a showing were made, a result the General Assembly never intended.

The Employer also argues that the reduction in compensation at issue was not so substantial as to justify Claimant's quitting. We disagree. Full reimbursement of Blue Cross/Blue Shield insurance coverage was negotiated by the parties as a material element of the employment relationship, with a special significance to the Claimant, who relied upon the coverage for treatment of her diabetic condition and its attendant health consequences. Upon discontinuation of reimbursement, Claimant would be required to incur an additional outlay of $170.68 a month in order to keep the negotiated coverage, essentially representing a 14.2% reduction in earned compensation.

While on the surface a 14.2% wage reduction is at the cusp of what is considered to be a substantial impact, the loss represented here means more than the measurable dollar value to the Claimant. The record demonstrates that the intrinsic value of this benefit to the Claimant more than doubled over the course of her employment. Given this trend, the actual loss represented to the Claimant by the Employer's discontinuation of reimbursement goes beyond the 14.2% wage reduction which would immediately result, and must be considered unreasonable.[7]

7. This case is not controlled by the Court's holding in *Unemployment Compensation Board of Review v. Holohan,* 20 Pa.Commonwealth Ct. 381, 341 A.2d 587 (1975). In that case we held that the claimant having quit his job due to the elimination of his health insurance fringe benefit upon reaching age 65 was unreasonable because he was eligible for medicare coverage and would not face any change in actual compensation or health care coverage. *See also Pacini v. Unemployment Compensation Board of Review,* 102 Pa.Commonwealth Ct. 355, 518 A.2d 606 (1986) (Holding *potential* benefit freeze not cause of necessitous and compelling nature).

In this instance, due to the special significance of the benefit in question and its intrinsic value to the Claimant, the Employer's unilateral alteration of that benefit and corresponding reduction in compensation gave the Claimant cause of a necessitous and compelling nature to quit her employment, consistent with the provisions of Section 402(b) of the Unemployment Compensation Law.

The order of the Board is therefore affirmed.

## ORDER

**AND NOW,** this 31st day of March, 1993, the order of the Unemployment Compensation Board of Review, dated March 2, 1992 and numbered B–296775, is hereby affirmed.